UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| YVETTE CARLISLE, ROBERT DAVIS, TESHIA CARLISLE (on behalf of her minor son, C.J.), KARENNA WHITFIELD, | **COMPLAINT AND DEMAND FOR A JURY TRIAL** |
| Plaintiffs, | **12-CV-8890 (RWS) (AJP)** |
| -v- | **ECF Case** |
| THE CITY OF NEW YORK, New York City Police Department Officers JOHN DOE 1 through JOHN DOE 7 (the name "John Doe" being fictitious as the identities are presently unknown), in their individual capacities, | |
| Defendants. | |

------------------------------------------------------------x

Plaintiffs YVETTE CARLISLE, ROBERT DAVIS, TESHIA CARLISLE (on behalf of her minor son, C.J.), and KARENNA WHITFIELD, by their attorney Robert M. Quackenbush of Rankin & Taylor, PLLC, as and for their complaint, do hereby state and allege:

**PRELIMINARY STATEMENT**

1. This is a civil rights action brought to vindicate plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, along with pendant claims under the common law of the State of New York.

2. Plaintiffs YVETTE CARLISLE, ROBERT DAVIS, TESHIA CARLISLE (on behalf of her minor son, C.J.), and KARENNA WHITFIELD's rights were violated when their apartment / overnight dwelling was subject to a pre-dawn raid by officers of the New York City Police Department ("NYPD") and, incident to that raid in which the police officers purported to

1

have a search warrant, the officers arrested everyone inside the apartment, took them to a police van, then to a police precinct where the officers put them into a holding cell and/or chained them to a metal bench, before eventually releasing them all several hours later – long after the search of the apartment had completed – without criminal charges.

3. While police officers are obviously permitted to detain occupants of a residence that is the subject of a valid search warrant, the length and nature of the detention must be commensurate with the purpose which authorizes the detention: the safe and orderly execution of a search warrant.

4. Here, though, officers took plaintiffs in handcuffs out of their apartment, into the hallway, and then to an NYPD van.

5. While plaintiffs were in the van, the officers completed their search of the apartment.

6. At the moment the search was completed without the discovery of any contraband, the officers should have *immediately* released the plaintiffs from custody.

7. Instead, the officers drove the plaintiffs and other arrestees to another location, where they remained for approximately one to two hours, and then were taken to a police precinct where they were chained to a bench and/or placed into a holding cell for several hours.

8. The detention was not based upon any quantum of suspicion of criminality by the plaintiffs.

9. Instead, the officers apparently believed they could ***indefinitely detain and even jail any person remotely associated with the premises that is the subject of a search warrant***. That belief is completely at odds with the reasoning of *Michigan v. Summers*, 452 U.S. 692 and both the contemporary and original meanings of the Fourth Amendment.

10. The officers' home invasion and subsequent *de facto* arrests of the plaintiffs violated their rights under the Fourth and Fourteenth Amendments.

11. Plaintiffs also seek an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343 (3-4). This action is brought pursuant to 42 U.S.C. § 1983 for violations of plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

13. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in that plaintiffs' claims arose in Bronx County in the State of New York, within the confines of this judicial district.

14. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

15. Consistent with the requirements of New York General Municipal Law § 50-e, all of the plaintiffs filed a timely Notices of Claim with the New York City Comptroller on or about June 4, 2012, within 90 days of the conduct complained of herein. Thus, this Court has supplemental jurisdiction over the plaintiffs' claims under New York law because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

16. None of plaintiffs' claims have been adjusted by the New York City Comptroller's Office.

## PARTIES

17. Plaintiff YVETTE CARLISLE is, and was at all times relevant to this action, a resident of Bronx County in the State of New York.

18. YVETTE CARLISLE is the mother of both plaintiff ROBERT DAVIS and plaintiff TESHIA CARLISLE, and she is the grandmother of TESHIA CARLISLE's minor son, C.J.

19. Plaintiff ROBERT DAVIS is, and was at all times relevant to this action, a resident of Bronx County in the State of New York

20. ROBERT DAVIS is YVETTE CARLISLE's son, TESHIA CARLISLE's sister, and the uncle of TESHIA CARLISLE's minor son, C.J.

21. Plaintiff TESHIA CARLISLE and her minor son, C.J. are, and were at all times relevant to this action, residents of Bronx County in the State of New York.

22. TESHIA CARLISLE is YVETTE CARLISLE's daughter and ROBERT DAVIS' sister.

23. Because her son C.J. is a minor, TESHIA CARLISLE brings these claims on his behalf.

24. At the time of the incident described below, C.J. was an invited overnight guest in YVETTE CARLISLE's apartment.

25. Plaintiff KARENNA WHITFIELD is, and was at all times relevant to this action, a resident of Bronx County in the State of New York.

26. At the time of the incident described below, KARENNA WHITFIELD was an invited overnight guest in YVETTE CARLISLE's apartment.

27. Defendant The City of New York ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

28. Defendant-Officers John Doe 1 through John Doe 7 (referred to herein as "the individual defendants," "police officers," or "officers") were at all times relevant herein employees and agents of the NYPD.

29. Upon information and belief, at least some of the individual defendants were assigned to the NYPD's 41st Precinct on the date of the incident described herein.

30. The individual defendants are being sued herein in their individual capacities.

31. The true names and shield numbers of the individual defendants are not currently known to the plaintiffs.[1] However, the individual defendants were employees or agents of the NYPD on the date of the incident described below. Accordingly, they are entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k.

32. The Law Department, then, is hereby put on notice (a) that plaintiffs intend to name those officers as defendants in an amended pleading once their true names and shield numbers become known to them and (b) that the Law Department should immediately begin preparing their defenses in this action.

33. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, and employees of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as agents and employees of the NYPD and incidental to the lawful pursuit of their duties as employees and agents of the NYPD.

34. The individual defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of the plaintiffs' rights.

## STATEMENT OF FACTS

35. The events herein complained of began in the pre-dawn hours of May 9, 2012 in YVETTE CARLISLE's apartment located at 627 Manida Street in Bronx County.

---

[1] By referring to the individual defendants as "John Doe," plaintiffs make no representation concerning their gender. Further, by referring to these defendants as "Officer(s)," plaintiffs make no representation concerning their actual ranks within the NYPD.

36. YVETTE CARLISLE and her son, ROBERT DAVIS, lived together in apartment # 2 on the ground floor of 627 Manida Street ("the apartment").

37. On the night of May 8, 2012 and morning of May 9, 2012, Ms. CARLISLE's grandson C.J. and C.J.'s friend KARENNA WHITFIELD were invited overnight guests in Ms. CARLISLE's apartment.

38. Around midnight, Ms. CARLISLE went to sleep in her bedroom, and C.J. and Ms. WHITFIELD went to sleep on a quilt on the living room floor.

39. At some point around 4:00 a.m., Mr. DAVIS' shift at his job working as a security guard ended, and he came back home and went to sleep in his bedroom.

40. Some time later, Ms. CARLISLE awoke and, at about 5:50 a.m., she hollered towards the living room for C.J. and Ms. WHITFIELD to get ready for school.

41. Very shortly thereafter, approximately 10 police officers – adorned with shields, flashlights, guns and helmets – broke through the front door of the apartment and entered.

    a. Prior to entering the apartment, none of the officers knocked on the apartment's door or otherwise announced their presence or its purpose.

    b. Obviously, the officers entered the apartment without the consent of any of its occupants.

    c. Prior to entering the apartment, no reasonable officer could have believed anyone inside the apartment was in physical danger or was destroying any kind of evidence.

42. The officers then grabbed C.J. and Ms. WHITFIELD, who were sleeping on the living room floor, and rear-cuffed them.

43. Other officers entered both Ms. CARLISLE's and Mr. DAVIS' respective bedrooms, rear-cuffed them, picked them up, and brought them into the living room where C.J. and Ms. WHITFIELD were already in handcuffs.

44. One of the officers mentioned that they had a search warrant.

45. Ms. CARLISLE repeatedly asked the officers to show her a copy of the warrant, but they either refused to do so or deflected her question(s) by telling her that she needed to ask the "arresting officer."

46. For approximately the next 15 minutes, the plaintiffs all remained handcuffed in the living room. During that time, Ms. CARLISLE continued asking the officers to see a copy of the purported search warrant, but none was ever shown to her.

47. One of the officers told the plaintiffs, in sum and substance, that they were going to bring dogs into the house to conduct a search, that the plaintiffs would be taken into the hallway during the search, and that the officers would let the plaintiffs back into their home if nothing illegal was found inside.

48. The officers then took the four plaintiffs – still in handcuffs – out of the apartment and into the hallway.

49. At least one dog and its NYPD handler then entered the apartment and, upon information and belief, searched the apartment for the presence of contraband.

50. Before the search began, however, the officers took the plaintiffs from the hallway and loaded them into an NYPD van which was parked on the street.

51. Besides the plaintiffs, there were other residents of the apartment building – upon information and belief, people who were associated with apartment # 1 at 627 Manida Street – who had been handcuffed and placed into the same NYPD vehicle.

7

52. The plaintiffs and other arrestee(s) were held in the van for over an hour.

53. Upon information and belief, during that time, police officers and their dog(s) searched through the apartment. They also search through plaintiffs' belongings inside the apartment. In the course of that search, the officers unnecessarily damaged several items of the plaintiffs' property.

54. Upon information and belief, the officers completed their search of the apartment while the plaintiffs were sitting in the NYPD vehicle outside 627 Manida Street.

55. The officers did not find any contraband inside of Ms. CARLISLE's apartment.

56. Nevertheless, despite completing the search of the apartment (which thereby ended the officers' justification for detaining plaintiffs incident to the purported search warrant), and despite the fact that nothing illegal was found inside the apartment, the officers unreasonably refused to release the plaintiffs from custody.

57. The NYPD van then left the area outside 627 Manida Street and proceeded to another location in the Bronx.

58. The van remained at the location approximately one to two hours before officers placed another arrestee inside.

59. The van then left the second location and went to the NYPD's 41st Precinct located at 1035 Longwood Avenue in the Bronx.

60. At the precinct, the plaintiffs were all placed in holding cell(s) and/or handcuffed to a metal bench.

61. While inside the precinct, Ms. CARLISLE continued asking the officers to show her a copy of the search warrant.

62. However, the officers never showed Ms. CARLISLE or any of the other plaintiffs a copy of the warrant, if it ever existed in the first place.

63. Unbelievably, while they were still in custody at the precinct, one or more of the officers asked Ms. CARLISLE to work as a paid undercover agent for the NYPD to make narcotics buys in or near apartments at 627 Manida Street.

64. Upon information and belief, the NYPD's apparent employment offer to Ms. CARLISLE was motivated by the fact they suspected or believed that criminal activity was taking place in one of Ms. CARLISLE's neighbors' apartments.

65. Ms. CARLISLE turned down the officer's offer to work as an undercover agent.

66. At some point around 9:30 a.m. or 10:00 a.m. that morning, the officers released the plaintiffs from custody without criminal charges of any kind.

67. Thus, plaintiffs were each in police custody for several hours before being released from the precinct.

## FIRST CLAIM
## DEPRIVATION OF RIGHTS
## UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
(*By all plaintiffs against all individual defendants*)

68. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

69. By entering plaintiffs' apartment or overnight dwelling without a warrant, and, even if there was a warrant, by failing to knock-and-announce their presence before entering, by taking plaintiffs from the apartment *to a police van and then to the police precinct*, by continuing to detain plaintiffs *after* the search of the apartment was completed, and by the other acts and omissions described above, the police officers acted under color of state law and deprived plaintiffs of their rights, privileges and immunities secured by the Fourth and Fourteenth

Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable seizures of their persons, homes/overnight dwellings, papers, effects, and other personal property; (b) freedom from unreasonable searches of their homes/overnight dwellings, papers, effects, and other personal property; (c) freedom from false arrest and false imprisonment; (d) freedom from unlawful entry into, and search of, plaintiffs' home and/or overnight dwelling, within the meaning of *Payton v. New York*, 445 U.S. 573; and (e) freedom from deprivation of liberty without due process of law.

70. The individual defendants' deprivation of the plaintiffs' constitutional rights resulted in the injuries and damages set forth above.

### SECOND CLAIM
### FALSE ARREST AND FALSE IMPRISONMENT
### UNDER THE LAWS OF THE STATE OF NEW YORK
(***By all plaintiffs against all defendants***)

71. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

72. By the actions described above, the individual defendants caused to be falsely arrested or falsely arrested all the plaintiffs, without probable cause, illegally and without a warrant to arrest, without any right or authority to do so, and they specifically exceeded the bounds of constitutional conduct set forth in *Michigan v. Summers*, 452 U.S. 692 and progeny.

73. Indeed, regardless of whether there was a warrant that authorized the search of the apartment, the nature of the plaintiffs' detention changed from an arguably-lawful detention pursuant to *Summers* into a *de facto* arrest **as soon as the officers took the plaintiffs from the hallway to the NYPD vehicle and then to the precinct stationhouse** and **as soon as the search of the apartment was over**.

74. The individual defendants' acts and conduct were the direct and proximate cause of plaintiffs' injuries and damages and violated their rights as guaranteed under New York law.

75. The individual defendants' conduct alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as the CITY's agents and employees, clothed with and/or invoking state power and/or authority, and, as a result, the CITY is liable to all the plaintiffs for common law false arrest and false imprisonment pursuant to the state common law doctrine of *respondeat superior*.

76. As a result of the foregoing, plaintiffs were each deprived of their liberty, suffered specific bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

### THIRD CLAIM
### ASSAULT AND BATTERY
### UNDER THE LAWS OF THE STATE OF NEW YORK
(*By all plaintiffs against all defendants*)

77. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

78. By the actions described above, the individual defendants did inflict assault and battery upon each of the plaintiffs. The individual defendants' acts and conduct were the direct and proximate cause of plaintiffs' injuries and damages and violated their common law rights as guaranteed by the laws and Constitution of the State of New York.

79. The individual defendants' conduct herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as the CITY's agents and employees, clothed with and/or invoking state power and/or authority, and, as a result, the CITY is liable to all the plaintiffs

for common law assault and battery pursuant to the state common law doctrine of *respondeat superior*.

80. As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM
## NEGLIGENCE
## UNDER THE LAWS OF THE STATE OF NEW YORK
(*By all plaintiffs against all defendants*)

81. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

82. The individual defendants, jointly and severally, negligently caused injuries, emotional distress and damage to each of the plaintiffs. Their acts and conduct were the direct and proximate cause of plaintiffs' injuries and damages and violated their common law rights as guaranteed by the laws and Constitution of the State of New York.

83. The individual defendants' conduct alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as the CITY's agents and employees, clothed with and/or invoking state power and/or authority, and, as a result, the CITY is liable to all the plaintiffs for common law negligence pursuant to the state common law doctrine of *respondeat superior*.

84. As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific injury, pain and suffering, psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

## FIFTH CLAIM
## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION, AND TRAINING
## <u>UNDER THE LAWS OF THE STATE OF NEW YORK</u>
### (*By all plaintiffs against The CITY*)

85. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

86. Defendant CITY negligently hired, screened, retained, supervised, and trained the individual defendants. Had the CITY adequately supervised and trained the individual defendants about the lawful scope of a detention incident to execution of a search warrant (valid or otherwise), the individual defendants never would have transported plaintiffs from their home/overnight dwelling to a police van and eventually to a police precinct where they were jailed, conduct which is obviously unlawful.

87. The defendants' acts and conduct were the direct and proximate cause of plaintiffs' injuries and damages violated their common law rights as guaranteed by the laws and Constitution of the State of New York.

88. As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

## <u>JURY DEMAND</u>

89. Plaintiffs demand a trial by jury in this action on each and every one of their damage claims.

   ***WHEREFORE***, plaintiffs demand judgment against the defendants individually and jointly and pray for relief as follows:

   a.   That they each be compensated for violations of their respective constitutional and common law rights, pain, suffering, mental anguish, and humiliation; and

   b.   That they each be awarded punitive damages against the individual defendants; and

    c.      That they each be compensated for attorneys' fees and the costs and disbursements of this action; and

    d.      For such other further and different relief as to the Court may seem just and proper.

Dated:   New York, New York
               December 6, 2012

                                     Respectfully submitted,

                                     /s/
                 By:     _____
                                     Robert M. Quackenbush
                                     Rankin & Taylor, PLLC
                                     *Attorneys for the Plaintiff*
                                     350 Broadway, Suite 701
                                     New York, New York 10013
                                     t: 212-226-4507